FILED
SUPERIOR COURT
OF GUAM

2024 SEP 25 PM 1: 18

CLERK OF COURT

BY: _____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **DAVID Q. MANILA,** | **SPECIAL PROCEEDINGS CASE NO.**<br>**SP0076-23** |
| Petitioner, | |
| v. | |
| **JOSEPH CARBULLIDO, in his capacity**<br>**as Director of Department of Corrections,** | **DECISION AND ORDER**<br>**GRANTING MOTION TO WITHDRAW**<br>**AND DENYING PETITION FOR WRIT**<br>**OF HABEAS CORPUS** |
| Respondent. | |

This matter came before the Honorable Dana A. Gutierrez on June 27, 2024, upon the Alternate Public Defender's ("APD") Motion to Withdraw as Court-Appointed Counsel (Jan. 5, 2024). Previously, Petitioner David Q. Manila ("Petitioner") filed a Petition for Writ of Habeas Corpus, and APD was appointed by the Court to represent him. APD now seeks to withdraw from that representation because it believes the Petition has no legal merit. At the hearing, Assistant Alternate Public Defender Tyler R. Scott appeared to argue the Motion to Withdraw. Special Assistant Attorney General ("SAAG") Joseph B. McDonald appeared on behalf of Respondent Joseph Carbullido. Petitioner was also present. Having duly considered the written briefings, oral arguments, and the applicable law, the Court **GRANTS** APD's Motion to Withdraw and **DENIES** the Petition for Writ of Habeas Corpus.

## BACKGROUND

On November 16, 2012, Petitioner was indicted as a co-defendant in Superior Court of Guam Criminal Case No. CF0020-08. In 2013, following a jury trial, Petitioner was convicted of

more than forty (40) charges, including two counts of First Degree Criminal Sexual Conduct (as a First Degree Felony), five counts of Conspiracy to Commit Kidnapping (as a First Degree Felony), and five counts of Kidnapping (as a First Degree Felony). *See People v. Manila*, 2015 Guam 40 ¶ 5. In 2014, the Honorable Anita A. Sukola entered Judgment and sentenced Petitioner to a total of thirty (30) years imprisonment.

Petitioner filed a direct appeal from the 2014 Judgment, leading to the Guam Supreme Court's opinion in *People v. Manila*, 2015 Guam 40 ("*Manila I*"). In *Manila I*, Petitioner argued the sufficiency of evidence, the sufficiency of his indictment, and Judge Sukola's denial of certain post-trial motions. *See generally id.* Ultimately, the Supreme Court vacated several of Petitioner's convictions but affirmed many others. *Id.* ¶¶ 65-66. The Supreme Court also noted that Petitioner's briefing appeared to raise a claim of ineffective assistance of counsel, but because "factual findings regarding this claim would be required and [Petitioner] has not briefed the issue fully," the Supreme Court declined to address that claim. *Id.* ¶ 64 n.5.

After remand, Judge Sukola vacated convictions as directed, but still sentenced Petitioner to thirty (30) years imprisonment based on the remaining convictions. Petitioner then appealed the new Judgment, leading to the Guam Supreme Court's opinion in *People v. Manila*, 2018 Guam 24 ("*Manila II*"). There, the Supreme Court held that Judge Sukola did not abuse her discretion by imposing this sentence and thus affirmed the new Judgment. *See generally id.*

On October 7, 2019, Petitioner filed a Petition for Writ of Habeas Corpus ("First Petition") in the Superior Court, reasserting his claim of ineffective assistance of trial counsel. After several delays related to the COVID-19 pandemic, the First Petition was assigned to this Court. On August 31, 2022, this Court denied the First Petition, finding that Defendant's trial counsel had not been ineffective. *See generally* Dec. & Order (Aug. 31, 2022).

2

On June 7, 2023, Petitioner attempted to file another Petition for Writ of Habeas Corpus. That Petition was assigned to the Honorable Judge Elyze M. Iriarte, who denied the Petition on procedural grounds but gave Petitioner leave to amend. On June 30, 2023, Petitioner filed a corrected Petition for Writ of Habeas Corpus (hereafter, "Second Petition"), as well as a Motion for Appointment of Counsel. The Second Petition presents several issues: briefly, (1) Petitioner's alleged immunity from prosecution; (2) Judge Sukola's denial of Petitioner's Motion to Sever and (3) three issues related to the testimony of a particular trial witness. The Motion for Appointment of Counsel asserts that Petitioner is unable to afford legal representation, that the issues involved in the Second Petition are complex, and that he is unable to pursue those issues on his own because he remains incarcerated. *See id.*

In October 2023, Petitioner's case was reassigned to this Court.[1] On October 31, 2023, the Court granted Petitioner's Motion for Appointment of Counsel and appointed APD to represent Petitioner. On January 5, 2024, APD filed the instant Motion to Withdraw as Court-Appointed Counsel. This Motion was presented in a form similar to an *"Anders* brief."[2] On February 14, 2024, Petitioner filed a "Response to Attorney Withdraw," requesting that he be appointed another attorney.

On April 11, 2024, the Court called a hearing to address the Motion to Withdraw. The Court raised questions about whether withdrawal generally, or an *Anders* brief specifically, was

---

[1] Initially, the Second Petition was also assigned to Judge Iriarte. However, Judge Iriarte recused herself from the case upon SAAG McDonald's entry of appearance because Judge Iriarte is related by consanguinity to SAAG McDonald. Form One – Disqualification (Oct. 6, 2023).

[2] *See Anders v. California,* 386 U.S. 738, 744 (1967) ("if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal."); *People v. Leon Guerrero,* 2001 Guam 18 ¶ 9 ("*Anders v. California* sets forth the procedures to be followed when court-appointed counsel seeks to withdraw from a seemingly frivolous appeal.").

proper in this context. *See* Min. Entry (Apr. 11, 2024). The Court ordered supplemental briefing on the "standard or procedure the Court must follow when considering a motion to withdraw as counsel in a habeas corpus case." Order for Further Briefing at 2 (Apr. 12, 2024).

On April 26, 2024, APD filed its Supplemental Brief. APD argued that it should be permitted to withdraw because (1) the claims advanced in the Second Petition have no legal merit, and (2) requiring APD to make frivolous arguments would violate Guam Rule of Professional Conduct ("GRPC") 3.1, which prohibits counsel from bringing a proceeding "unless there is a basis in law and fact for doing so that is not frivolous." Supplemental Br. at 5 (Apr. 26, 2024). APD also argued that while it is unclear whether *Anders* procedures are required in habeas corpus proceedings, they are undoubtedly permissible and consistent with due process. *See id.* at 2-4. Respondent filed a Response Brief on May 10, 2024. Respondent agreed that all of Petitioner's arguments were frivolous but suggested that APD should not be permitted to withdraw until after the Second Petition was denied on the merits. *See generally id.*

On June 27, 2024, the Court heard oral arguments on the Motion to Withdraw and thereafter took the matter under advisement.

## DISCUSSION

### 1.    Habeas Corpus Legal Standard

In Guam, "[e]very person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint." 8 GCA § 135.10.[3] "If no legal cause is shown for the imprisonment or restraint, or for the continuation thereof, the court shall discharge the party from the custody or

---

[3] Because this statute is identical to Section 1473 of the California Penal Code, case law interpreting the California statute is persuasive authority. *May v. People*, 2005 Guam 17 ¶ 9.

restraint under which he is held." 8 GCA § 135.34. A prisoner who is in custody "by virtue of process from any court of this Territory, or judge or officer thereof," may be discharged:

(a) When the jurisdiction of such courts or officer has been exceeded;
(b) When the imprisonment was at first lawful, yet by some act, omission, or event which has taken place afterwards, the party has become entitled to a discharge;
(c) When the process is defective in some matter of substance required by law, rendering such process void;
(d) When the process, though proper in form, has been issued in a case not allowed by law;
(e) When the person having the custody of the prisoner is not the person allowed by law to detain him;
(f) Where the process is not authorized by any order, judgment, or decree of any court, nor by any provision of law;
(g) Where a party has been committed on a criminal charge without reasonable or probable cause.

8 GCA § 135.38. This statute "entitles an offender to be discharged from confinement by Guam courts if the process pursuant to which he is held is in some manner defective." *Taisipic v. Marion*, 1996 Guam 9 ¶ 35.

In habeas corpus proceedings, the petitioner "bears the burden of establishing that the judgment under which he or she is restrained is invalid." *In re Cox*, 70 P.3d 313, 327 (Cal. 2003). "[T]he petitioner bears a heavy burden initially to *plead* sufficient grounds for relief, and then later to *prove* them." *People v. Duvall*, 886 P.2d 1252, 1258 (Cal. 1995) (emphasis in original). "[I]t is not easy to show that an inmate is entitled to a writ of habeas corpus, and most petitions must be denied for the failure to state a prima facie case for relief." *In re White*, 18 Cal.Rptr.3d 444, 446 (Ct. App. 2004).

### 2.    APD's Withdrawal Is Permissible

Under GRPC 6.2(a), court-appointed counsel "shall not seek to avoid appointment by a tribunal to represent a person except for good cause, such as . . . representing the client is likely to

result in violation of the Rules of Professional Conduct or other law." Here, APD asserts that its representation of Petitioner would violate GRPC 3.1, which provides that counsel "shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." APD's Motion to Withdraw examines each of the issues raised by the Second Petition and concludes that each—and thus the Petition as a whole—lacks legal merit.

Although the Motion to Withdraw itself does not reference *Anders v. California*, APD's Supplemental Brief describes the Motion as an "*Anders*-style brief." However, APD's Motion is akin to the procedure that was *disapproved* in *Anders v. California*: the submission of a "no-merit letter," wherein "after a study of the record and consultation with petitioner, the appointed counsel concluded that there was no merit to the appeal" and notified the court accordingly. *Anders*, 386 U.S. at 739. However, this was held to be insufficient:

> The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae. The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court.

*Id.* at 744. Instead,

> if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. <u>That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.</u> A copy of counsel's brief should be furnished to the indigent and time allowed him to raise any points that he chooses; <u>the court - not counsel - then proceeds, after full examination of all the proceedings, to decide whether the case is wholly frivolous.</u>

*Id.* at 744-45 (emphases added). Here, while the Motion to Withdraw persuasively argues that the Petitioner's issues appear to lack legal merit, the Motion does not suggest anything that "might

arguably support" Petitioner's claim, nor indicate that APD examined the record to look for potential issues other than those proposed by the Petitioner. Thus, while the Motion may be an "*Anders*-style brief" insofar as it asserts that Petitioner's case is without merit, it is not a true *Anders* brief.

But this prompts a broader question of whether *Anders* procedures are required in the habeas corpus context. The Guam Supreme Court has made clear that *Anders* procedures apply to criminal appellate representation, *see People v. Leon Guerrero*, 2001 Guam 19, but not to civil appellate proceedings representation, *see In re J.L.L.P.*, 2002 Guam 21. Habeas corpus proceedings, by contrast, do not fit neatly into either of these categories. A habeas corpus proceeding "is not a criminal action, and may be characterized as 'civil in nature' for some purposes." *In re Jenkins*, 525 P.3d 1057, 1070 (Cal. 2023) (internal citations omitted). Nonetheless, the California Supreme Court has "generally refrained from deciding whether a habeas corpus proceeding is civil or criminal," instead declaring it a "special proceeding and not entirely analogous to either category." *Id.*

As APD's Supplemental Brief notes, federal case law is divided as to whether *Anders* procedures must be followed in habeas corpus proceedings. *See Graves v. McEwen*, 731 F.3d 876, 878 (9th Cir. 2013) (noting that within the Ninth Circuit, "a number of unpublished decisions have accepted *Anders* briefs in habeas appeals," while others have "expressly disapproved" of *Anders* briefs and even "chastised the appointed attorney" for filing one). The other federal circuits are "similarly divided." *See id.* at 879 (collecting cases). However, the Court notes that *Anders* procedures derive from the constitutional right to indigent representation, i.e., "assur[ing] penniless defendants the same rights and opportunities on appeal—as nearly as is practicable—as are enjoyed by those persons who are in a similar situation but who are able to afford the retention

of private counsel." *Anders*, 386 U.S. at 745. Indigent post-conviction habeas petitioners do not have a constitutional right to appointed counsel. *See Pennsylvania v. Finley*, 481 U.S. 551, 551-52 (1987).[4] Thus since Petitioner "has no underlying constitutional right to appointed counsel in state postconviction proceedings," he likewise "has no constitutional right to insist on the *Anders* procedures which were designed solely to protect that underlying constitutional right." *Id.* at 557.

From these authorities, the Court concludes that APD was not obligated to comply with *Anders* procedures before it moved to withdraw its representation. APD's withdrawal is instead governed by the lower standard of GRPC 6.2(a), which requires only a showing that APD's representation of Petitioner is "likely to result in violation of the Rules of Professional Conduct or other law." Since APD's claim asserts a potential violation of GRPC 3.1, the Court will analyze whether any of Petitioner's issues are non-frivolous.

### 3.    Petitioner's Claims Could Have, and Should Have, Been Raised Earlier

The Court first considers whether these issues are appropriate to be raised here. "The general rule is that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction." *Ex parte Dixon*, 264 P.2d 513, 514 (Cal. 1953). In other words, "[a] claim that could have been raised on direct appeal may generally not be raised for the first time in a petition for writ of habeas corpus." *In re McDowell*, 269 Cal.Rptr.3d 872, 877 (Ct. App. 2020). "The petitioner cannot be allowed to present his reasons against the validity of the judgment

---

[4] The Court's appointment of APD was a discretionary appointment of counsel pursuant to Local Rules of the Superior Court of Guam, Misc. Rule 1.1.1(b)(2). That Rule was promulgated by the Guam Supreme Court. *See id.*, SOURCE. Thus, the Guam Supreme Court has implicitly held that the right to counsel in a post-conviction proceeding is discretionary, not mandatory.

8

against him piecemeal by successive proceedings for the same general purpose." *Ex parte Horowitz*, 203 P.2d 513, 547 (Cal. 1949).

Here, each of Petitioner's four claims could have been raised during the *Manila I* appeal process. Petitioner knew (or should have known) all the facts giving rise to his claim of immunity at the time his prosecution commenced, i.e., several years before trial was held. Petitioner knew (or should have known) all the facts giving rise to his claim regarding his Motion to Sever at the time that motion was denied by the Superior Court, i.e., pre-trial. And Petitioner knew (or should have known) all the facts giving rise to his claims regarding a certain trial witness at the time of trial itself. Petitioner has not alleged, and the Court does not find *sua sponte*, any new facts relevant to these claims—all the necessary facts were at Petitioner's disposal by the time of *Manila I*, and so these claims could have been raised in that appeal.

"Although habeas corpus ordinarily cannot serve as a second appeal, that general rule is primarily a discretionary policy which may be overlooked where 'special circumstances' are deemed to exist." *In re Coughlin*, 545 P.2d 249, 251 (Cal. 1976). However, Petitioner bears the burden of showing any such "special circumstance." *See Aguon v. Beckron*, 2020 Guam 7 ¶ 21 ("a petitioner seeking habeas relief must justify and explain any significant delay with specificity."); *accord In re Walker*, 518 P.2d 1129, 1134 (Cal. 1974). Petitioner has not met that burden, even though he was given the clear opportunity to do so. The Second Petition is based on a Superior Court of Guam self-help form, and it contains the following prompt: "If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal." Second Petition at 5. Petitioner declined to provide a response to this prompt. *Id.* The Second Petition also provides the following prompt: "Explain any delay in the discovery of the claimed grounds for relief and in raising the

9

claims in this petition." Second Petition at 7. Petitioner's response states, in its entirety, "under the 2 prong test." It is unclear what Petitioner means by this, as nothing else in the Second Petition discusses such a test.

Construing the Second Petition liberally, Petitioner appears to argue that his immunity claim derives from *Commonwealth v. Cosby*, 252 A.3d 1092 (Penn. 2021), a Pennsylvania Supreme Court opinion that was issued several years after *Manila I*. However, the Court does not find this argument persuasive. First, *Cosby* is a Pennsylvania state court decision, and thus does not directly bear on the law of Guam. *Cf. People v. Castro*, 2016 Guam 16 ¶ 21 (noting that extra-jurisdictional case law "is only persuasive and does not bind or control" Guam law). Moreover, even if *Cosby* did apply to Guam, that opinion does not announce a change in law. *Cosby* instead synthesizes and applies decades of prior case law, nearly all of which predate the *Manila I* appeal. Thus, even if Petitioner could not have known about the *Cosby* opinion itself at the time of *Manila I*, there was already a robust body of immunity-agreement case law which he could have relied on to make this same argument. Petitioner's prior ignorance of law does not rise to the level of a "special circumstance" justifying a delay in raising this issue. *See Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (collecting cases).

As the Guam Supreme Court has noted, "[t]he most rudimentary procedural efficiency demands that litigants present all available arguments to an appellate court on the first appeal." *People v. Tedtaotao*, 2017 Guam 12 ¶ 7 (quoting *Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 505 (4th Cir. 1992)). Petitioner could have presented these arguments during *Manila I*, and thus he cannot do so now.

10

4.    **In the Alternative, Petitioner's Claims Are Without Merit**

Even if the Court were to set aside Petitioner's procedural deficiency, the Court nonetheless

agrees with APD that each claim lacks legal merit.

A.    **Immunity from Prosecution**

Petitioner contends that he was immune from this prosecution through his participation in

a related case before the District Court of Guam, *United States v. Song Ja Cha*. Petitioner asserts

that he was questioned during that case, at which time "an FBI agent said that [Petitioner] would

be provided immunity [in] answering any incriminating questions." Second Petition at 3. However,

Petitioner was nevertheless charged in the Superior Court of Guam several years later. *Id.*

Petitioner argues that his prosecution violates a rule expounded by the Pennsylvania Supreme

Court in *Commonwealth v. Cosby*:

> when a prosecutor makes an unconditional promise of non-prosecution, and when
> the defendant relies upon that guarantee to the detriment of his constitutional right
> not to testify, the principle of fundamental fairness that undergirds due process of
> law in our criminal justice system demands that the promise be enforced.

252 A.3d 1092, 1131 (Penn. 2021) (emphasis added).

APD persuasively argues that the *Cosby* rule is not implicated here because Petitioner was

not offered immunity by a prosecutor—he was "offered immunity" by a federal law enforcement

agent. *See* Mot. Withdraw at 3-4. However, law enforcement agents do not have the independent

authority to make such an offer. *See, e.g., United States v. Flemmi*, 225 F.3d 78, 88 (1st Cir. 2000)

(noting that "the clear weight of authority" holds that "a promise of use immunity made

independently by an FBI agent exceeds the scope of his actual authority (and is, therefore,

unenforceable)."); *United States v. Lilly*, 810 F.3d 1205, 1213 (10th Cir. 2016) ("there is nothing

inherent in a federal investigator's role that actually authorizes the investigator to make [immunity] promises[.]").

In his Response to Attorney Withdrawal (Feb. 14, 2024), Petitioner concedes that a federal agent "is not authorize[d] to provide immunity." *Id.* at 2. Petitioner nonetheless argues that the federal *prosecutor* actually granted him immunity, which is shown by the fact that Petitioner was not arrested immediately after giving self-incriminating testimony at the *Song Ja Cha* trial. *See id.* The Court is not familiar with all the proceedings in the *Song Ja Cha* trial and therefore cannot confirm whether or to what extent Petitioner's testimony was self-incriminating. Regardless, the Court cannot infer that Petitioner's federal non-prosecution means that he was offered immunity. Federal prosecutors are "not obligated to prosecute all offenders." *United States v. Steele*, 461 F.2d 1148, 1152 (9th Cir. 1972). Petitioner's non-prosecution could have resulted from any number of factors, such as a perceived weakness of the case, a lack of office resources, lack of jurisdiction over the alleged offenses, or other matters of prosecutorial discretion. Thus, the mere fact of his non-prosecution does not prove the existence of a valid immunity offer. And Petitioner has alleged no other facts that might support the existence of such an offer—for example, he has not alleged that he had any direct discussion with any federal prosecutors, nor has he alleged the specific terms of the purported immunity agreement he was offered. Under these circumstances, Petitioner has failed to sufficiently allege the existence of an immunity agreement. The claim therefore fails on this basis.

**B.    Denial of Motion to Sever**

Petitioner asserts, without further discussion, that he "should have been tried separately, due to a lot of discrepancy [sic] of the prosecutor and line of question were leading questions

toward the victim." Second Petition at 5. The Court construes this assertion as a claim that Judge Sukola should have severed Petitioner's trial.

Under Guam law, "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." 8 GCA § 65.35 (emphasis added). The Guam Supreme Court has not yet interpreted this statute in detail, but the Court notes that it is based on a former version of Federal Rule of Criminal Procedure ("FRCP") 14(a). *See id.,* NOTE. For that reason, federal case law interpreting FRCP 14(a) is persuasive in interpreting 8 GCA § 65.35. *See People v. Quitugua,* 2009 Guam 10 ¶ 10 (adopting federal case law as persuasive in similar context).

Federal courts generally hold that "defendants who are charged together should be jointly tried." *United States v. Buena Lopez,* 989 F.2d 657, 660 (9th Cir. 1993). This is because joint trials "generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability-advantages which sometimes operate to the defendant's benefit. . . . [and] generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Richardson v. Marsh,* 481 U.S. 200, 210 (1987). Promoting this policy, the U.S. Supreme Court has held that FRCP 14(a) "does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States,* 506 U.S. 534, 538-39 (1993). Accordingly, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

13

Because severance is committed to the trial court's discretion, yet generally disfavored, it is difficult for a defendant to win a reversal based on non-severance. To succeed, "the defendant must show that failure to sever was so manifestly prejudicial that it outweighed the dominant judicial concern with judicial economy and compelled the exercise of the trial court's discretion to sever." *United States v. Little*, 753 F.2d 1420, 1446 (9th Cir. 1984). "This is a heavy burden, one which mere conclusory allegations cannot carry." *United States v. Slaughter*, 708 F.3d 1208 (11th Cir. 2013).

Here, Petitioner has alleged only that his trial should have been severed because of "a lot of discrepancy of the prosecutor" regarding "leading questions toward the victim." As discussed below, the Court is not persuaded that these were "discrepancies," but even if they are, Petitioner has not explained how these "discrepancies" could have been avoided through a severance. Petitioner faced, *inter alia*, criminal sexual conduct charges, and this witness testified that Petitioner committed acts of criminal sexual conduct against her on three occasions. Since this testimony was clearly important to some of the charges against Petitioner, it is likely that this witness still would have testified against Petitioner even in a severed trial. It is therefore unclear to the Court how a severance would have prevented the harm he alleges. The Court therefore finds no prejudice, much less "manifest prejudice," as a result of Judge Sukola's denial of Petitioner's Motion to Sever. The claim therefore fails on this basis.

### C.   Issues Related to Witness "E.N."

Petitioner raises three related issues regarding the testimony of "E.N.," one of the prosecution's trial witnesses. Petitioner first argues that E.N.'s testimony "was all rehearse[d] because it never happen[ed]." Second Petition at 6. As APD notes, this is functionally a post-conviction challenge to witness credibility. As a general rule, "[i]ssues that depend on the

14

credibility of witnesses, and the effect or weight of evidence, are to be decided by the jury." *Gunning v. Cooley*, 281 U.S. 90, 94 (1930); *see also In re N.A.*, 2001 Guam 7 ¶ 35 ("It is the fact-finder who has the duty of judging credibility after assessing a victim's statements and the circumstances surrounding the making of those statements."). Accordingly, reviewing courts decline to reassess witness credibility. *See, e.g., United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996) ("We must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict."); *People v. Jones*, 792 P.2d 643 (Cal. 1990) ("it is not a proper appellate function to reassess the credibility of the witnesses."); *see also Cosby*, 252 A.3d at 1129. The Court cannot overturn the jury's credibility determination, so this claim must be denied.

Next, Petitioner argues that Judge Sukola erred in allowing the prosecutor to ask leading questions to E.N. However, "[t]he use of leading questions on direct examination is not always improper." *United States v. Archdale*, 229 F.3d 861, 865 (9th Cir. 2000). Under Guam Rule of Evidence ("GRE") 611(c), leading questions may be used on direct examination "as may be necessary to develop the witness' testimony." Reviewing courts are not well-positioned to determine what was or was not "necessary" in the context of a trial; thus, "trial judges have been and must be given a wide discretion with respect to permitting leading questions." *People v. Perez*, 2015 Guam 10 ¶ 44 (quoting *City-Wide Trucking Corp. v. Ford*, 306 F.2d 805, 807 (D.C. Cir. 1962)). Moreover, even where the use of leading questions is improper, that issue merits reversal "only if the judge's action . . . amounted to, or contributed to, the denial of a fair trial." *Archdale*, 229 F.3d at 865. Petitioner has not identified any specific leading questions that he believes were improper, nor alleged any specific legal error Judge Sukola made in permitting those questions.

Given the flexible standard afforded by GRE 611(c) to trial judges, and the inherent difficulty of trying to redetermine what was "necessary" for the development of E.N.'s testimony, the Court declines to second-guess Judge Sukola on this issue. This claim must therefore be denied.

Finally, with respect to the alleged misidentification, Petitioner claims that E.N. misidentified Petitioner as his co-defendant at trial. However, as APD's brief shows, the trial transcript suggests that E.N. correctly identified Petitioner. *See* Mot. Withdraw at 6-7 (citing People's Supp. Excerpt of Record, CRA2014-007 Vol. I at 277-78 (Aug. 29, 2013)). Because this claim is based on a factually incorrect premise, it is without merit.

## CONCLUSION

The Court has determined that Petitioner's Second Petition is both procedurally improper and without legal merit. Accordingly, the Court agrees that requiring APD to argues these issues to the Court would require APD to violate GRPC 3.1. The Court therefore **GRANTS** APD's Motion to Withdraw.

Moreover, having determined that the Second Petition is both procedurally improper and without legal merit, the Court finds no basis to appoint new counsel, or to hear further argument on these issues. Instead, the Court **DENIES** the Second Petition for Writ of Habeas Corpus in its entirety.

SO ORDERED: _____**SEP 2 5 2024**_____

**HONORABLE DANA A. GUTIÉRREZ**
Judge, Superior Court of Guam

**SERVICE VIA EMAIL**
I acknowledge that an electronic
copy of the original was e-mailed to:

AG's, APD, McDonald.
Law Firm

SEP 2 5 2024    1:44 pm
Date:            Time:

*Edna M. Nego*

Deputy Clerk, Superior Court of Guam

16